IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DULCICH INC., an Oregon corporation, | Case No. 3:15-cv-01522-SB |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| COORDINATED CARE PROGRAMS, LLC, a foreign corporation, | |
| Defendant. | |

**BECKERMAN, Magistrate Judge.**

Dulcich Inc. ("Dulcich") filed a Complaint in the Clackamas County Circuit Court for the State of Oregon against Coordinated Care Programs LLC ("CCP"), asserting a single claim for Declaratory Judgment. Dulcich seeks a declaration that it is not required to pay a termination fee under the terms of a Coordinated Health/Care Services Agreement. (Compl. ¶¶ 19-20, Ex. A.)

Page 1 - FINDINGS AND RECOMMENDATION

CCP removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). Dulcich filed a Motion to Remand Case to State Court pursuant to 28 U.S.C. § 1447, arguing that the amount in controversy does not satisfy the $75,000 threshold required for diversity jurisdiction under § 1332(a). CCP filed a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), arguing that the relevant factors weigh in favor of transferring this case to the Southern District of Ohio.

Oral argument was heard on November 3, 2015. For the reasons that follow, the district judge should deny Dulcich's motion to remand, and deny CCP's motion to transfer venue.

## I. FACTS AND PROCEDURAL HISTORY

Dulcich is a seafood company that does business under the assumed business name "Pacific Seafood Group." (Compl. ¶ 1.) At all material times, Dulcich offered a self-funded health insurance program for its employees. (Compl. ¶1.) CCP provides health insurance programs for companies that have self-funded plans, such as Dulcich. (Compl. ¶2.) Dulcich and CCP entered into an agreement titled "Coordinated Health/Care Services Agreement" ("Agreement"), that was effective as of November 1, 2009. (Compl. Ex. A.) Pursuant to the Agreement, CCP provided services to Dulcich to administer and manage Dulcich's employee health benefit plans. (Compl. ¶3.) The parties performed under this Agreement for several years. However, in 2014, Dulcich notified CCP that it was terminating the Agreement as of November 1, 2014. (Compl. ¶4.)

Following termination of the Agreement, a dispute arose between the parties concerning whether CCP was entitled to a termination fee under the terms of the Agreement. (Compl. ¶¶ 15-24.) Dulcich contends that it does not owe a termination fee under the Agreement because the termination

fee provision was rendered inapplicable once Dulcich changed the manner in which it paid its monthly fee to CCP, from a monthly "Performance Fee" to a monthly "Fixed Fee." (Compl. ¶¶ 4-16.) CCP contends that the full termination fee is owed, and that the termination fee is not dependent upon whether Dulcich paid its monthly fee as a "Performance Fee" or a "Fixed Fee." (Notice of Removal ¶ 8.)

> Section 6.6(a)(2) of the Agreement provides:
>
> <u>Non-Renewal</u>. In the event of a non-renewal pursuant to Section 6.2, if the Total Claims for the ending Plan Year are below the Total Claim Target for such ending Plan Year, a termination fee in an amount equal to 50% of the annualized maximum for the ending Plan Year shall be paid to the Company. Such termination fee shall be due on the effective date of termination and shall be in addition to any amounts due for the ending Plan Year based on the final reconciliation or for insufficient notice pursuant to Section 6.6(b).

(Compl. Ex. A at 10.) CCP alleges that approximately $103,000 is owed by Dulcich under the terms of this provision. (Notice of Removal ¶ 8.)

On November 26, 2014, CCP sent Dulcich an invoice, which provided in relevant part: "Coordinated Care Programs LLC is entitled to compensation in the amount of $103,103.00, or 50% of the annualized maximum fee of $206,206. Reflecting the value we place on this relationship, we are reducing the termination fee to 33% of the maximum, or $68,048.00." (Compl. Ex. C; Pl.'s Mot. Remand 3.) Dulcich elected not to pay the invoice amount and, instead, filed an action for declaratory relief in state court. (Compl. ¶¶ 15, 19, 23.) Dulcich seeks a declaration "that the Termination Fee is invalid and unenforceable under the applicable law." (Compl. ¶ 24.)

/////

/////

/////

Page 3 - FINDINGS AND RECOMMENDATION

## II. DISCUSSION

### A. Motion to Remand

#### 1. Legal Standard

A civil action may be removed to federal court if the district court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Federal jurisdiction exists over all civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). An action is removable only if none of the parties in interest properly joined and served as a defendant is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b)(2) ("forum defendant rule"). In this case, defendant is not a citizen of Oregon, and there is complete diversity among the parties. Thus, the only question is whether the amount in controversy requirement has been satisfied.

Courts decide whether the amount in controversy requirement has been met by first considering whether it is "facially apparent" from the complaint. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 690 (9th Cir. 2006). If the amount in controversy is not apparent on the face of the complaint, "the court may consider facts in the removal petition, and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (quotations and citation omitted); *see also Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (district court may consider post-removal evidence in determining whether the requisite amount is in controversy); *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992) (if allegations of jurisdictional facts are challenged in an appropriate manner, a party "must support them by competent proof"). In a diversity case, a removing party relying upon summary-judgment-type evidence "has the burden of proving, by a preponderance of the evidence,

that the amount in controversy exceeds $75,000." *Cohn v. Petsmart*, 281 F.3d 837, 839 (9th Cir. 2002).

**2.     Analysis**

Pursuant to 28 U.S.C. § 1332(a)(1), CCP removed this case from Clackamas County Circuit Court and represented that the amount in controversy is a $103,000 termination fee. (Notice of Removal 3.) In this litigation, Dulcich seeks a declaration that the termination fee is "invalid and unenforceable under the applicable law." (Compl. ¶ 24.) Alternatively, Dulcich contends that its obligation is capped at $68,048, based on the invoice issued by CCP. Specifically, Dulcich maintains that CCP unilaterally reduced the termination fee owed under the Agreement, and CCP did not condition that reduction on a timely payment. (Bree Palmer Decl. ¶¶ 6-7, Sept. 25, 2015.) In addition, Dulcich asserts that CCP never demanded "any sum in excess of $75,000." (Palmer Decl. ¶ 7.) Accordingly, Dulcich seeks an order pursuant to 28 U.S.C. § 1447(c), remanding the case to state court on the ground that CCP's removal was improper and, as a result, this Court lacks subject matter jurisdiction.

In response, CCP argues that the amount in controversy is the value of its "earned non-renewal fee, which even Dulcich acknowledges . . . amounts to $103,103." (Def.'s Resp. 2.) CCP contends that Dulcich's request for declaratory relief does not define the amount in dispute. Rather, the Court must consider the full extent of Dulcich's potential liability under the Agreement. (Def.'s Resp. 4.) To meet its burden in proving by a preponderance of the evidence that the amount in controversy exceeds $75,000, CCP relies upon the terms of the Agreement. (Compl. Ex. A.) As

Page 5 - FINDINGS AND RECOMMENDATION

discussed above, the Agreement provides for a termination fee in the event of a "non-renewal." The parties do not dispute that the amount owed under that provision, as calculated by CCP, is $103,103.[1]

The Court agrees with CCP. The sole purpose of this litigation is for Dulcich to obtain a declaratory judgment that it is not liable to CCP for a termination fee under the terms of the Agreement. Thus, the issue before the Court is whether the termination fee in the Agreement is enforceable against Dulcich. If that provision is enforceable, the object or value of the litigation is the face value of the termination fee. In other words, under section 6.6(a)(2) of the Agreement, Dulcich has *potential* liability to CCP of $103,000. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Matsuda v. Wada*, 128 F. Supp. 2d 659, 663-64 (D. Haw. 2000) ("[T]he value of the relief should be measured by the liability that will follow if the contract is valid and enforceable."); *see also Biotronik, Inc. v. Medtronic USA, Inc.*, 840 F. Supp. 2d 1251, 1257 (D. Or. 2012) ("Thus, to determine the amount in controversy, this court must measure Biotronik's potential liability to Medtronic . . . ."); 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3708 (4th ed. 2015) ("[I]t is well-settled that the amount in controversy is said to be measured for subject matter jurisdiction purposes by the value of the right that the plaintiff seeks to enforce or to protect against the defendant or the value of the object that is the subject matter of the action."). This amount is the value Dulcich may owe in the event that the Court accepts CCP's interpretation of the

---

[1] The Court expresses no opinion on the application or enforceability of section 6.6(a)(2) of the Agreement.

Page 6 - FINDINGS AND RECOMMENDATION

Agreement. Thus, as of the date of removal, the amount in controversy was satisfied based upon the termination fee of $103,103, calculated in accordance with section 6.6(a)(2) of the Agreement.

The evidence before the Court is that Dulcich is potentially liable for $103,103, which exceeds the $75,000 amount in controversy requirement under 28 U.S. C. § 1332(a). Accordingly, the district judge should deny Dulcich's motion to remand.

**B.     Motion to Transfer Venue under 28 U.S.C. § 1404(a)**

    **1.     Legal Standard**

On a motion to transfer venue under 28 U.S.C. § 1404(a), a court may transfer any civil action "[f]or the convenience of the parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). The forum to which transfer of venue is sought must be a district court where the case "might have been brought." *Id.* Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Steward Org., Inc. v.. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotations and citation omitted). In determining whether to grant the party's request for permissive transfer of venue, the court uses a multi-factor test which balances the convenience of the parties and location of the evidence, among other things, against a plaintiff's preferred venue. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000).

The burden is on the defendant to establish that the balance of the factors supports transferring venue, as there is a strong presumption in favor of a plaintiff's chosen forum. *See, e.g., Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[G]reat weight is generally accorded plaintiff's choice of forum. . . ."); *Edwards v. Depuy Synthes Sales, Inc.*, No. C 13-6006 CW, 2014 WL 2194798, at *2 (N.D. Cal. May 22, 2014) ("As a general rule, the plaintiff's choice of forum is given

Page 7 - FINDINGS AND RECOMMENDATION

significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer."). The district court has discretion in deciding whether the relevant factors warrant transfer of the action to another forum. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988) ("Weighing of factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.") (quotations and citation omitted).

### 2.   Analysis

CCP moves to transfer venue to the Southern District of Ohio. While CCP acknowledges Oregon is a proper venue, it seeks a transfer pursuant to 28 U.S.C. § 1404(a), on the grounds that CCP performed under the Agreement in Columbus, Ohio, and all of CCP's witnesses and documents related to Dulcich and the Agreement are located in Ohio. (Kara Trott Decl. ¶ 4, Aug. 17, 2015.) Additionally, section 8.4 of the Agreement states that the Agreement shall be governed by "the laws of the State of Ohio" to the extent Ohio law is not inconsistent with or otherwise governed by the Employee Retirement Income Security Act ("ERISA"). (Compl. Ex. A.)

In response, Dulcich acknowledges that venue is proper in Ohio, but urges the Court to deny CCP's motion to transfer venue on the grounds that Dulcich's forum selection is entitled to deference and its witnesses and evidence are located in Oregon. (Pl.'s Resp. 5.)

It is undisputed that this case could have been brought in the Southern District of Ohio,[2] and therefore the remaining issues to consider are the convenience of the parties, the convenience of the

---

[2] Under 28 U.S.C. § 1391(b), a civil action may be brought in: (1) a district where a defendant resides, if all defendants are residents of the State in which the district is located; (2) a district in which a substantial part of the events giving rising to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district where the action may be brought, any district where a defendant is subject to the court's personal jurisdiction.

Page 8 - FINDINGS AND RECOMMENDATION

witnesses, and the interests of justice. To determine whether transfer of venue to another forum is appropriate, the Court weighs several factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99. The Court may also consider "the local interest in the controversy and the relative court congestion and time to trial in each forum." *Safe Drain Inc. v. Kate Vito, et al.*, No. C-14-01867-DMR, 2014 WL 4088147, at *3 (N.D. Cal. Aug. 19, 2014).

After considering all of the relevant factors, including the presumption in favor of Dulcich's chosen forum, the respective parties' contacts with Oregon, where the claims arose, the convenience of witnesses and ease of access to sources of proof, the law governing the action, the relation of the community to the action, and the relative court congestion, the Court finds this case should remain in the District of Oregon.

### (a) Location where the Agreement was Negotiated and Executed

Neither Dulcich nor CCP argue that this factor weighs in its favor. The Agreement was negotiated and executed in both Ohio and Oregon. Similarly, each party performed under the Agreement in its respective state. This factor is neutral.

### (b) State Most Familiar with the Governing Law

CCP argues that this factor weighs in favor of transfer because of "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). CCP maintains that the

Page 9 - FINDINGS AND RECOMMENDATION

issue before the Court is "a pure issue of law." (Def.'s Mem. Transfer Venue 7.) In addition to the fact that Ohio law will govern pursuant to the choice of law provision in the Agreement, at oral argument CCP noted that similar contracts containing termination fee provisions it has negotiated with other clients may be relevant here, and that those contracts are also governed by Ohio law. CCP argues that this factor weighs heavily in favor of allowing the federal court in Ohio to interpret the termination fee provision.

The parties agree that disputes arising under the Agreement (excluding ERISA) are governed by Ohio law. (Compl. Ex. A at § 8.4.) Both federal district courts (Oregon and Ohio) are familiar with, and capable of applying, the legal principles necessary to adjudicate this dispute under Ohio law. *See Foster v. Nationwide Mutual Ins. Co.*, No. C07-04928 SI, 2007 WL 4410408 at *6 (N.D. Cal. Dec. 14, 2007) ("[O]ther federal courts are fully capable of applying California law."). Nevertheless, on balance, the parties' decision to select Ohio law to govern the Agreement slightly favors venue in Ohio, and therefore this factor weighs in favor of transfer to Ohio.

### (c) Plaintiff's Choice of Forum

The law is well established that courts must give the plaintiff's choice of forum great deference, unless defendant can show that other factors of convenience clearly outweigh the plaintiff's choice. *See, e.g., Decker Coal*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

CCP argues that this factor does not weigh as heavily as usual in favor of plaintiff's choice of forum, because this is a breach of contract action between two corporations. CCP does not cite any legal authority in support of its position. The Court notes that CCP is a national company,

operating in all states. In contrast, Oregon is Dulcich's home state and Dulcich does not do business in Ohio. This factor weighs against transfer to Ohio.

### (d) Respective Parties' Contacts with the Forum

CCP argues that this factor is neutral because its only contact with Oregon is through its Agreement with Dulcich. CCP's principal place of business is in Ohio, and Dulcich's principal place of business is in Oregon. CCP is a national corporation that does business in Oregon. CCP created an ongoing relationship and obligations with Dulcich, an Oregon entity. The majority of Dulcich's employees covered by CCP's health plan are Oregon residents. In contrast, Dulcich's only affiliation to Ohio is its Agreement with CCP. Thus, CCP has more substantial contacts in Oregon than Dulcich has in Ohio. This factor weights against transfer to Ohio.

### (e) Contacts Related to Plaintiff's Cause of Action in the Forum

CCP argues that this a breach of contract action involving nonpayment for services rendered in Ohio. (Def.'s Mem. Transfer Venue 6; Def.'s Reply 2-3.) On the other hand, Dulcich is an Oregon resident seeking clarification of its obligation to CCP under the Agreement. The breach alleged by CCP, nonpayment for services, arose in Oregon. The parties each performed their duties under the Agreement in their respective forums. This factor is neutral.

### (f) Difference in Cost of Litigation

CCP argues that the extrinsic evidence and CCP's witnesses are located in Ohio. In response, Dulcich maintains that its witnesses and third party witnesses and evidence are located in Oregon.

Neither party demonstrates that the time and expense incurred by travel to the other's forum weighs more heavily on one entity than the other. Absent a showing by CCP that it will suffer inconvenience and expense that is distinctly different from what Dulcich will endure, the Court

Page 11 - FINDINGS AND RECOMMENDATION

declines to shift the costs and inconvenience from CCP to Dulcich. *See Decker Coal*, 805 F.3d at 843 (factor weighs against transfer if inconvenience is merely shifted); *see also Jensen v. Simon & Schuster, Inc.*, No. 3:12-cv-00759-PK, 2012 WL 6839713, at *7 (D. Or. Dec. 12, 2012) (comparing the financial resources of an individual plaintiff and a large corporation in evaluating a motion to transfer venue); *Peterson v. Nat'l Sec. Techs., LLC*, No. 12-CV-5025-TOR, 2012 WL 3264952, at *5 (E.D. Wash. Aug. 9, 2012) ("The court agrees that the parties' respective abilities to absorb the costs of litigation in either district is a relevant consideration. Indeed, the interests of justice require that the court consider whether financial constraints on either party could unfairly impact the outcome of the case.") (quotations and citations omitted). This factor weighs against transfer to Ohio.

### (g) Availability of Compulsory Process of Non-Party Witnesses

CCP and Dulcich agree that this factor is neutral.

### (h) Ease of Access to Sources of Proof

CCP argues that this factor supports a transfer because "all of the relevant witnesses that performed this work are located in Ohio and all of the relevant documents are maintained in Ohio." (Trott Decl. ¶ 4; Def.'s Mem. Transfer Venue 3.) Specifically, CCP contends that most of the relevant witness testimony will be provided by its employees who were involved in negotiating and drafting the Agreement. In addition, CCP contends that its dealings with other clients on the termination fee provision may become relevant, and that evidence is located in Ohio.

Dulcich responds that "there are three groups of people knowledgeable about the facts of this dispute – Plaintiff's employees, Defendant's employees, and the Wells Fargo broker/consultants –

two of the three are here in Oregon."[3] (Pl.'s Resp. 7.) Dulcich also contends that it has documents in its possession in Oregon related to the Agreement, as does the Portland-based Wells Fargo consultants who participated in the Agreement negotiations. (Pl.'s Resp. 7.) Dulcich argues that the documents relevant to this dispute are those related to the negotiation, rather than the performance, of the Agreement. (Pl.'s Resp. 8 ("majority of evidence concerning the negotiation of the [Agreement] is here in Oregon").)

Neither Dulcich nor CCP provide the Court with specific information (name, substance of the testimony, and relevance to the claim) regarding necessary witnesses. Rather, both parties allude generally to a need for witnesses residing in their respective forum states. In addition, neither Dulcich nor CCP identify a particular person whose convenience will or will not be impacted by a transfer. In addition, the location of other sources of proof, *i.e.*, documents, is not particularly significant in this case given the ease with which the parties can transfer documents to various locations. *See, e.g., Welenco, Inc. v. Corbell*, Civ. No. S-13-0287 KJM CKD, 2014 WL 130526, at *8 (E.D. Cal. Jan. 14, 2014) (finding that the location of documentary evidence is generally accorded little weight "given that advances in technology have made it easy for documents to be transferred to different locations") (quotations and citation omitted). There are witnesses located in both forums, and the documentary evidence is easily accessed in either forum. Based on the evidence before the Court, this factor is neutral.

/////

---

[3] In 2009, Dulcich hired consultants from the Portland office of Wells Fargo to assist with the evaluation and negotiation of CCP's proposal to manage Dulcich's employee benefit plan. (Brees Decl. ¶ 4.) The Wells Fargo consultants "were involved in reviewing and negotiating both the Original Agreement and the Amended Agreement, together with all the renewals." (Brees Decl. ¶ 6.)

### (i) Public Policy

Both Oregon and Ohio have an interest in adjudicating disputes involving their corporate residents. This factor is neutral.

### (j) Court/Congestions and Time to Trial

Neither party presented any argument or evidence in support of this factor. This factor is neutral.

### (k) Summary

After weighing the relevant considerations, the Court finds that this case should remain in the District of Oregon. All but one of the relevant factors are neutral or weigh against transfer. The sole factor favoring transfer is that Ohio state law governs this dispute. The Agreement between the parties does not, however, include a forum selection clause. Both parties are sophisticated, and the Court must assume that the absence of a forum selection clause in the Agreement was intentional. *See, e.g., Williams v. Deutsche Bank Securities, Inc.*, No. 04 Civ. 7588 (GEL), 2005 WL 1414435, at *5 (S.D. N.Y. June 13, 2005) ("The choice of law provision is considerably narrower than, and at any rate clearly different from, the forum selection clause. It is therefore reasonable to assume that the parties, in utilizing different standards for the choice of law and choice of forum, had different intentions with respect to the reach of the two provisions.") The Ohio choice of law provision in the Agreement does not substitute for a forum selection clause. The fact that Ohio law governs the dispute, standing alone, is insufficient to disturb Dulcich's choice of forum. Accordingly, the district judge should deny CCP's request to transfer this case to the Southern District of Ohio.

/////

/////

Page 14 - FINDINGS AND RECOMMENDATION

## III. CONCLUSION

For the reasons set forth above, the district judge should DENY Dulcich's Motion to Remand Case to State Court Pursuant to 28 U.S.C. § 1447 (ECF No. 11), and DENY CCP's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (ECF No. 7).

## IV. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 23rd day of December 2015.

STACIE F. BECKERMAN
United States Magistrate Judge